**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Miguel Guillermo Valenzuela-Muro,<br><br>　　　　Defendant. | No. CR-25-01135-PHX-GMS<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

　　　　Pursuant to Fed. R. Crim. P. 23(c), the Court announced its findings of fact and its conclusions of law in the above case in open court, with the Defendant present, on October 7, 2025. This Order serves to memorialize those findings and conclusions. (*See* Doc. 38).

## FINDINGS OF FACT

1. The Government has established the identity of the Defendant as being Miguel Guillermo Valenzuela-Muro.
2. Defendant Miguel Guillermo Valenzuela-Muro was indicted with one count of illegal reentry as a removed alien, in violation of 8 U.S.C. § 1326(a), on August 12, 2025.
3. Defendant first entered the United States on May 6, 2016, in Sasabe, Arizona. Defendant entered the country afoot.
4. Defendant was arrested by United States Customs and Border Patrol ("CBP") on May 9, 2016, in Tucson, Arizona. He was fingerprinted on the same day. From a statement signed by Defendant and Border Patrol Agent Christopher Apodaca, Defendant claimed that he was a citizen of Mexico and did not claim any legal status in the United States.

5. On May 10, 2016, Defendant was found inadmissible to the United States and deportable for a period of 5 years from the date of his departure from the United States as a consequence of having been found inadmissible as an arriving alien.
6. Defendant was removed from the United States on May 13, 2016, through Del Rio, Texas. Defendant exited the United States afoot over the Del Rio International Bridge and entered Mexico.
7. Defendant was previously deported and removed from the United States on May 13, 2016.
8. Defendant was arrested by United States Immigration and Customs Enforcement ("ICE") Officer Victor Ortiz-Maldonado on August 1, 2025, in Phoenix, Arizona. In Defendant's possession was a voter identification card from Mexico. While the Court did not allow the voter identification card to be admitted into evidence under Fed. R. Evid. 803(8) as a matter of the Defendant's Alien file ("A-file"), the Court accepts the testimony from Officer Ortiz that Defendant had a voter identification card from Mexico in his possession when he was arrested.
9. Officer Ortiz testified that the first time that immigration officials observed Defendant in the United States (after his May 2016 deportation) was in Phoenix, Arizona in July 2025. Officer Ortiz also testified that, to his knowledge, the Defendant had been under constant surveillance by immigration authorities starting on July 30, 2025. The Court accepts Officer Ortiz's testimony.
10. Prior to his arrest, Defendant was inhabiting a residence in Phoenix, Arizona. Defendant had also registered a car in his name in Arizona.
11. On August 1, 2025, Defendant was placed in ICE custody, and he was later fingerprinted.
12. Defendant was fingerprinted again on October 1, 2025.
13. Defendant's fingerprints from May 9, 2016, August 1, 2025, and October 1, 2025, were all a match based on Defendant's right index finger, as confirmed by Marie Yochum, a fingerprint examiner for CBP.

14. Upon Defendant's arrest on August 1, 2025, ICE Officer Chrstopher Spohn reviewed Defendant's A-file. Defendant's A-file did not contain any visa applications for Defendant. The A-file also did not have any records that Defendant had a valid visa to enter the United States, nor did it show that Defendant had a lawful resident card. Furthermore, there were no records of Defendant having entered the United States after May 13, 2016—the date of his initial removal from the United States—nor was there any record of Defendant attempting to enter a port of entry to the United States. No record of the above was found in corresponding immigration enforcement databases.

## CONCLUSIONS OF LAW

1. For a defendant to be found guilty under 8 U.S.C. § 1326(a), the Government must prove four elements beyond a reasonable doubt: (1) the defendant was previously deported from the United States; (2) thereafter, the defendant knowingly and voluntarily reentered the United States without having obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; (3) the defendant was an alien[1] at the time of reentry; and (4) the defendant was free from official observation or restraint[2] between the moment he physically crossed into U.S. territory and the moment he was apprehended.

2. A defendant need not obtain consent from the Attorney General or the Secretary of Homeland Security to reapply for admission, however, if the defendant can "establish that he was *not required to obtain [] advance consent [from the Attorney General]* under this chapter or any prior Act." 8 U.S.C. § 1326(a)(2)(B) (emphasis added).

3. 8 C.F.R. § 212.2(a) states that an alien who has been deported is "inadmissible to the United States unless the alien has remained outside of the United States for five

---

[1] An alien is a person who is not a natural-born or naturalized citizen of the United States.

[2] "Official restraint" means the defendant was under constant, continuous observation by a United States officer, either directly or by camera surveillance, from the moment he first crossed the border and entered the territory of the United States up until the time of his apprehension. If the individual was first observed after he had physically crossed the border of the United States, then he is not under constant official restraint.

consecutive years," and that if an alien seeks to reenter the U.S. prior to the completion of the five-year period, then he "must apply for permission to reapply for admission."

4. Moreover, 8 U.S.C. § 1182(a)(9)(A) provides that "[a]ny alien who has been ordered removed . . . and who again seeks admission within 5 years of the date of such removal . . . is inadmissible. . . . [This clause] shall not apply to an alien seeking admission within a period if, prior to the date of the alien's reembarkation . . . the Attorney General has consented to the alien's reapplying for admission."

5. 8 C.F.R. § 212.2 and 8 U.S.C. § 1182 establish that once-deported aliens are categorically barred from reentering the United States for a five-year period. If an alien seeks to reenter before the five-year period has expired, he must seek permission from the Attorney General. After the five-year period, the alien still needs consent from the Attorney General, pursuant to 8 U.S.C. § 1326(a)(2), to reenter the United States—else the alien faces the threat of criminal liability. The alien can avoid such liability if he can demonstrate that consent from the Attorney General or Secretary of Homeland Security was "not required." 8 U.S.C. § 1326(a)(2)(B).

6. The Ninth Circuit has previously declined to address the specific issue presented here, and the Court need not necessarily reach the issue, given that 8 U.S.C. § 1326(a)(2)(B) places the burden on the Defendant to establish that he was not required to obtain advance consent after the five-year period, and Defendant did not proffer any evidence that he entered the United States *after* the five-year period. However, even assuming that Defendant entered the United States after the five-year period, the Fifth, Fourth, and Sixth Circuits have construed the exception under 8 U.S.C. § 1326(a)(2)(B) to apply to situations where a former alien has reentered the United States upon receiving a visa, after the five-year period and without the express consent from the Attorney General. *See United States v. Bernal-Gallegos*, 726 F.2d 187, 188 (5th Cir. 1984) ("The interplay between §§ 1182 and 1326 can best be demonstrated by applying them to concrete facts. If, prior to [end of five-year period], defendant in this case had applied to the immigration service for a visa, and had he met all other requirements, he would

have been eligible to receive a visa without special permission of the Attorney General since his deportation occurred more than five years before his visa application. If, however, defendant had been deported less than five years before applying for a visa, he would not have been eligible for a visa without permission from the Attorney General."); *United States v. Joya-Martinez*, 947 F.2d 1141, 1144 (4th Cir. 1991) ("While we hold that § 1326 has not been amended or repealed by implication, we do not deny [defendant] the benefit of a defense based on [§ 1182], namely that he was legally in the country because he had obtained a visa as permitted by [§ 1182]."); *United States v. Romero-Caspeta*, 744 F.3d 405, 408 (6th Cir. 2014) ("The [Fifth Circuit] explained that § 1182 would only serve as a defense to § 1326 liability if, after the expiration of the five-year exclusionary period, the alien had obtained a visa, with or without the express consent of the Attorney General.").

7. The Court similarly adopts the reasoning of the Fifth, Fourth, and Sixth Circuits and holds that a defendant cannot categorically assert that he was no longer required to seek advance consent from the Attorney General or Secretary of Homeland Security to reapply for admission to the United States solely on the basis that five years have passed since his initial removal.

8. Instead, a defendant can only offer a defense, based on 8 U.S.C. § 1182, that he was legally present in the United States pursuant to a visa or other lawful means (e.g., permanent residency)—such that he was not "required to obtain [] advance consent" under 8 U.S.C. § 1326(a)(2)(B).

## APPLICATION OF LAW TO FACT

### A. Defendant was previously deported from the United States.

1. Defendant was previously deported and removed from the United States on May 13, 2016, as confirmed by documentary evidence and live testimony from ICE Officers Rodrigo Escamilla and Christopher Apodaca.

2. Fingerprint records confirmed that Defendant's fingerprints taken in 2025 (in August upon his arrest, and in October before his trial) matched his fingerprints recorded in

May 2016, when Defendant was first removed from the United States.

3. The Government has thus established beyond a reasonable doubt that the man arrested and fingerprinted in this case was the man that was deported on May 13, 2016.

### B. Defendant knowingly and voluntarily reentered the United States without having obtained the consent of the Attorney General or the Secretary of Homeland Security to reapply for admission into the United States.

4. The Government has established, beyond a reasonable doubt, that Defendant knowingly and voluntarily reentered the United States. Immigration authorities observed Defendant's presence in Phoenix, Arizona in July 2025. Defendant was inhabiting a residence in Phoenix, Arizona. Defendant had also registered a car in his name in Arizona.

5. The Government has also established, beyond a reasonable doubt, that Defendant did not obtain consent from the Attorney General or the Secretary of Homeland Security to apply for readmission to the United States. Defendant's A-file did not contain any evidence to indicate the contrary.

6. Defendant does not fall under the category of individuals who are exempt from seeking consent from the Attorney General or the Secretary of Homeland Security prior to applying for reentry under 8 U.S.C. § 1326(a)(2)(B). Defendant did not proffer any evidence that he entered the United States more than five years after his May 13, 2016 deportation and removal to Mexico. Defendant also did not offer any defense that he did not need to obtain consent because he was legally present in the United States pursuant to a visa or other lawful means. Defendant's A-file did not contain any evidence that Defendant was lawfully in the United States pursuant to a visa or permanent residency.

### C. Defendant was an alien at the time of reentry.

7. The Government has established, beyond a reasonable doubt, that Defendant is an alien, based on the lack of records indicating lawful entry into the United States, the Defendant's possession of a voter registration card from Mexico, and Defendant's previous statement in May 2016 stating that he was a national of Mexico and did not

have legal status in the United States.

8. The Court finds that Defendant has not established a basis to suppress his deportation record from May 2016, which includes Defendant's previous statement regarding his alienage. Even if the statement were to be suppressed, the Court finds beyond a reasonable doubt that Defendant is not an authorized resident of the United States and is an alien, based the lack of records indicating lawful entry into the United States and the Defendant's possession of a voter registration card from Mexico.

   **D. Defendant was free from official observation or restraint between the moment he physically crossed into U.S. territory and the moment he was apprehended.**

9. The Government has established, beyond a reasonable doubt, that Defendant was free from official observation or restraint between the moment he physically crossed into U.S. territory and the moment he was apprehended. Defendant was first observed in the United States only after he had physically crossed the border of the United States—and he thus was not under constant official restraint.

10. Immigration officials first observed Defendant in the United States (after his May 2016 deportation) in Phoenix, Arizona—hundreds of miles away from the U.S.-Mexico border—in July 2025. Defendant had been under constant surveillance by immigration authorities starting on July 30, 2025.

## CONCLUSION

For the reasons stated above, and for the reasons stated on the record on October 7, 2025, the Court finds that Defendant is guilty under 8 U.S.C. § 1326(a) for illegal reentry to the United States.

Dated this 14th day of November, 2025.

_____
G. Murray Snow
Senior United States District Judge

- 7 -